UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-20648-CIV-ALTONAGA

**S.R.**,

    Plaintiff,
vs.

**UNITED STATES OF AMERICA**,

    Defendant.
_____/

## ORDER

By order dated May 27, 2008 ("Summary Judgment Order") [D.E. 180], the undersigned denied Defendant, United States of America's (the "Government['s]") Motion for Summary Judgment [D.E. 128]. The issues addressed in the Summary Judgment Order were whether Plaintiff, S.R.'s claims against Defendant are barred because she failed to file an administrative complaint within the statute of limitations period set forth in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2401(b), and if so, whether she is entitled to equitable tolling. While agreeing with the Government that S.R. failed to timely file her administrative complaint, the undersigned declined to resolve S.R.'s entitlement to equitable tolling by a summary judgment. And while the Court granted the Government's request to certify the question of whether equitable tolling is available under Section 2401(b) for interlocutory appeal, the Government later declined to take an interlocutory appeal, and the parties agreed to proceed to trial.

The case came before the Court for a trial beginning July 18, 2008. At the trial the undersigned heard from several witnesses, including Plaintiff, and reviewed numerous exhibits. After a careful review of the parties' written and oral submissions, the undersigned addresses the

CASE NO. 07-20648-CIV-ALTONAGA

Government's renewed, *ore tenus* motion for a judgment on partial findings pursuant to Rule 52(c),[1] Federal Rules of Civil Procedure, made at the conclusion of the trial.

## I.      Findings of Fact

In the Summary Judgment Order, the Court set out the undisputed facts of this case, and that discussion is again incorporated here, along with additional facts gathered from evidence presented at trial.

Plaintiff, S.R., is a former federal inmate. S.R. was sentenced on March 9, 1999 and subsequently assigned to the Federal Correctional Institution in Danbury, Connecticut ("FCI-Danbury"). During her incarceration at FCI-Danbury, she was transferred to and temporarily housed at the Federal Detention Center in Miami, Florida ("FDC-Miami") on four separate occasions: from October 2, 2002 until January 7, 2003;[2] from August 13, 2003 until December 16, 2003;[3] from March 30, 2004 until August 31, 2004;[4] and finally from July 12, 2005 until August 16, 2005. Each

---

[1] Under Rule 52(c), Fed. R. Civ. P., "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. . . . A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."

[2] During this first stay at FDC-Miami, S.R. was housed in general population from October 8, 2002 to December 2, 2002; she was housed in the Special Housing Unit ("SHU") from December 8, 2002 to January 7, 2003.

[3] During her second stay at FDC-Miami, S.R. was housed in the SHU from August 13 to August 26, 2003; she was returned to general population on August 26, 2003, and remained there until December, 4, 2003. On December 4, 2003, she was placed in the SHU.

[4] She was held in the SHU from April 1, 2004 to May 28, 2004. From May 28, 2004 to June 7, 2004, S.R. was housed on the fifth floor of FDC-Miami, but not in general population. She was again placed in the SHU from June 7 to July 16, 2004. From July 16, 2004 to August 31, 2004, S.R. was in general population.

CASE NO. 07-20648-CIV-ALTONAGA

of these temporary transfers to FDC-Miami was made at the request of the United States Attorney's Office for the Southern District of Florida so S.R. could serve as a witness or cooperate in other criminal prosecutions and investigations.

During S.R.'s first two stays at FDC-Miami she was sexually assaulted, but not raped, by Defendants, Charles Jenkins ("Jenkins"), Isiah Pollock ("Pollock"), and Antonio Echeverria ("Echeverria"),[5] then-Federal Bureau of Prisons' ("BOP['s]") guards.[6] S.R. complained about the three men sometime in 2003 to federal agent Danny DeVito, and he told her he would advise federal prosecutor, Karen Rochlin, the prosecutor in one of the cases for which S.R. was providing cooperation. Mr. DeVito also told S.R. to write him a letter, and she wrote several letters to Mr. DeVito and also to Ms. Rochlin.[7] On December 8, 2003, S.R. met with Lieutenant Thomas Miller and Officer Palmer of the BOP Special Investigative Service, and advised them of the sexual misconduct of staff members. (*See BOP Central File*; *Agr. Tr. Exh.* 60).

At Lt. Miller's request, on December 10, 2003, S.R. signed an affidavit prepared by BOP employees describing the sexual abuse by Jenkins, Pollock, and Echeverria. (*See Ag. Tr. Exh.* 31). She had earlier given the BOP employees the information in hand-written form. (*See Ag. Tr. Exh.* 27). The affidavit recited many of the same allegations contained in S.R.'s complaints filed in this

---

[5] Pollock was not at FDC-Miami during S.R.'s second stay, as he had been fired for bringing contraband into the facility.

[6] Plaintiff voluntarily dismissed her claims against Jenkins and Pollock with prejudice before trial (*see* [D.E. 179, 206]). After a default judgment against Echeverria was set aside after the trial, on October 8, 2008, Plaintiff voluntarily dismissed her claims against Echeverria (*see* [D.E. 251]).

[7] Photocopies of some of the letters were admitted in Agreed Trial Exhibit ("*Ag. Tr. Exh.*") 40.

CASE NO. 07-20648-CIV-ALTONAGA

action.  Lt. Miller in turn wrote a memorandum to SIA Agent Jeff James (*see Agr. Tr. Exh.* 28) in order for James to initiate an investigation.  Several days after signing the affidavit, S.R. was returned to FCI-Danbury.

Before returning to FCI-Danbury, on December 11, 2003, S.R. informed her psychologist at FDC-Miami,[8] Dr. Edda Aponte, that she had recently made allegations of sexual misconduct against BOP employees.  (*See FBP Notes of Dr. Edda I. Aponte, Dec. 11, 2003*; *Ag. Tr. Exh.* 5).  On December 11, 2003, FDC-Miami's Warden, Richard Stiff ("Stiff"), referred S.R.'s allegations against Jenkins, Pollock, and Echeverria to the BOP Office of Internal Affairs for an investigation.

Plaintiff also told her case manager, Mr. Gauge, and her counselor, Mr. McAllister, of the assaults, and addressed them in BOP forms called "cop-outs."  At some point during her incarceration she tried to reach her court-appointed attorney, and even contacted her sentencing judge, Judge Malcolm Howard of the Eastern District of North Carolina, to find out who her attorney was, but was not successful in obtaining that information.  (*See Agr. Tr. Exh.* 9).  She also wrote to Judge Howard, advising him of the sexual abuse by Jenkins and Echeverria.  (*See Agr. Tr. Exh.* 64). On January 21, 2004, Mark McClish, Supervisory Deputy U.S. Marshal forwarded that letter to the BOP for investigation.  (*See Agr. Tr. Exh.* 64).  A "Statement Analysis" which McClish sent along with the correspondence indicates McClish's belief that the allegations in S.R.'s letter to Judge

---

[8] Notes from S.R.'s psychiatric file from FDC-Miami reflect S.R. admitted to a history of sexual abuse, including domestic violence victimization, as early as January 14, 2003.  (*See FPB Psychology Services Intake Screening of Jan. 14, 2003*; *Agr. Tr. Exh.* 5).  At that consultation, she "was made aware of the BOP Sexual Assault Prevention Program." (*Id.*).  She also related a history of psychiatric symptoms since the age of 14, and stated she carried the diagnosis of bipolar disorder and paranoid schizophrenia. (*Id.*).

4

CASE NO. 07-20648-CIV-ALTONAGA

Howard were fabricated.

On March 9, 2004, after she returned to FCI-Danbury, S.R. provided another affidavit to agents from the Department of Justice's Office of the Inspector General ("OIG") detailing her allegations. (*See Agr. Tr. Exh.* 13). She was not told to hire an attorney or to fill out any other form. The investigation ultimately concluded S.R.'s allegations could not be substantiated.

At the trial, S.R. testified that during her third stay at FDC-Miami, between March 2004 and June 2004, she was vaginally and anally raped over a dozen or over twenty times by Defendant, Damioun Cole ("Cole").[9] She also testified she was sexually mistreated again by Jenkins during her final stay at FDC-Miami between July and August, 2005. In 2005, S.R. had returned to FDC-Miami to provide testimony against Cole for sexually assaulting another federal inmate.

On June 14, 2005, while at FCI-Danbury, S.R. was interviewed by the Federal Bureau of Investigation ("FBI") in connection with its investigation into allegations of sexual assault by Cole against another inmate. During this interview, S.R. once again provided details regarding her accusations of sexual battery by BOP guards dating back to 2002, including the alleged abuse committed by Cole. She was not advised to fill out any forms or told to hire an attorney. On August 10, 2005, S.R. met with and conveyed information regarding the abuse to an attorney, Rhonda Anderson, at FDC-Miami.

S.R. returned to FCI-Danbury after her fourth stay at FDC-Miami. On the Intake Form (*see Agr. Tr. Exh.* 60), she indicated she had been sexually assaulted in 2004. She was never questioned about this information.

---

[9] Plaintiff voluntarily dismissed her claims against Cole on April 3, 2008 (*see* [D.E. 156]).

5

CASE NO. 07-20648-CIV-ALTONAGA

During this almost three-year period, from October 2002 to August 2005, Plaintiff spoke to and corresponded with numerous people. On certain occasions she informed of the sexual abuse, as summarized above, although she did not do so in the context of seeking money damages from the United States Government. McClish's Statement Analysis (*Agr. Tr. Exh.* 64) opines S.R. "is more concerned that she cannot be housed in an institution on the east coast rather than having the perpetrator punished." On other occasions Plaintiff did not reveal the sexual assaults, although she had the opportunity to do so.

For example, in January 2003, while at FCI-Danbury, Plaintiff wrote Judge Howard a 12-page letter in which she did not mention the sexual assaults occurring at FDC-Miami. (*See Agr. Tr. Exh.* 9). Written records of counseling sessions with psychologists at FDC-Miami from September 27, 2002 to December 4, 2002, contain no reference to complaints of sexual assaults. (*See Agr. Tr. Exh.* 5). In September, October, and November of 2003, S.R. wrote several letters to Ms. Rochlin, but did not alert Ms. Rochlin to the sexual assaults. (*See Agr. Tr. Exh.* 40). When S.R. later notified Ms. Rochlin of the sexual assaults by correspondence mailed in December 2003, it was not to request damages from the Government, but to ask that the Government bring criminal charges against the men.

S.R. testified in a criminal case heard by the undersigned in 2003, and at no time did she request the opportunity to address the Court to raise her charges of sexual assault. In October 2003, S.R. testified before the Honorable Patricia Seitz in another criminal proceeding, and she did not notify the judge of the sexual assaults. To the questions, "have you ever been sexually assaulted?" and "have you recently been sexually assaulted?" contained in a Federal Bureau of Prisons Intake

6

CASE NO. 07-20648-CIV-ALTONAGA

Form dated January 8, 2003, S.R. answered "No." (*See Agr. Tr. Exh.* 6). On a similar intake form dated December 30, 2003, Plaintiff answered in like fashion. (*See id.*).

While at FCI-Danbury, on March 9, 2004, Plaintiff met with two government agents from the OIG, provided them with a 12-page handwritten statement, and during the interview she did not advise the agents she wanted to file a complaint against the Government for damages resulting from the actions of the prison guards. (*See Agr. Tr. Exh.* 13). The first time S.R. discussed the possibility of filing a lawsuit against the Government was in the meeting she had with attorney, Rhonda Anderson, at FDC-Miami in August 2005. After her meeting with Ms. Anderson, S.R. did not file a civil complaint against the Government or otherwise attempt to communicate with Ms. Anderson or any other attorney.

FBI Special Agent James Kaelin has been the FBI liaison with FDC-Miami since late March or early April 2005. He personally arrested Cole and during his investigation into Cole, he learned of S.R. and he asked the OIG representatives to meet with her in FCI-Danbury. He suspects he could have developed sufficient probable cause for an indictment against Cole for S.R.'s allegations concerning Cole, but the matter was not pursued.[10] After his role in the Cole investigation was over, he received a telephone call from S.R. Agent Kaelin suggested to S.R. she would be "better off" retaining an attorney to assist her in obtaining the FBI files pertaining to the investigation into Cole and to help her in filing a lawsuit. She may have called Agent Kaelin on two other occasions, and

---

[10] Cole pleaded guilty to violating 18 U.S.C. § 2243(b) in *United States v. Cole*, Case No. 05-Cr-20538-Altonaga. During the plea colloquy, the prosecutor stated the Government would have been able to prove beyond a reasonable doubt that Cole also had sex with S.R. The Government agreed not to prosecute Cole for having sex with S.R. as part of the plea agreement.

the next call the Agent received was from an attorney for S.R.

S.R. was released to a halfway house on December 4, 2005, and was released from federal custody on June 12, 2006. She contacted attorney William Plyler on July 10, 2006. S.R. initially filed a civil complaint against the United States on March 12, 2007. (*See Complaint* [D.E. 1]). The action was dismissed without prejudice on August 3, 2007 (*see* [D.E. 45]) because of S.R.'s failure to file an administrative complaint with the BOP prior to commencing her civil action, as is required by 28 U.S.C. § 2675(a). Standard Form 95 ("Form 95") is a form administrative complaint for the submission of claims under the Federal Tort Claims Act, 28 U.S.C. § 2671, to the appropriate federal agency. S.R. was unaware of the existence of Form 95, and she believed she had done everything possible while incarcerated to redress the sexual assaults against her.

On April 12, 2007, S.R. filed a Form 95 with the BOP requesting $5,000,000 in damages. S.R. then re-filed her civil action against the United States on October 9, 2007, under the FTCA, alleging claims for premises liability, negligent hiring, and negligent supervision related to the sexual assaults she suffered while incarcerated at FDC-Miami. (*See Complaint* [D.E. 1], Case No. 07-22655-Civ-Altonaga). The later action was subsequently consolidated with this case on October 18, 2007. (*See Order* [D.E. 99]).

**II.     Conclusions of Law**

As stated, at the conclusion of the trial the Government orally moved for a judgment on partial findings pursuant to Rule 52(c), Federal Rules of Civil Procedure. The Government renewed its earlier request, considered by the Court in the Summary Judgment Order [D.E. 180], that judgment be entered against Plaintiff on the grounds that she failed to file an administrative

CASE NO. 07-20648-CIV-ALTONAGA

complaint (utilizing Standard Form 95) within the statute of limitations period contained in the FTCA, 28 U.S.C. § 2671, and she is not otherwise entitled to equitable tolling of the limitations period. It is undisputed that S.R. did not file her administrative complaint until April 12, 2007, more than two years after all of the assaults cited in her Complaint, and that her claims are barred by the limitations period contained in 28 U.S.C. § 2401(b).[11]

The remaining preliminary question to which much of the testimony was adduced and the evidence directed was whether S.R. is entitled to equitable tolling of the limitations period. The undersigned left this issue open in the Summary Judgment Order, indicating "that regardless of whether or not Section 2401(b) is deemed to be a jurisdictional prerequisite, equitable tolling is available where the circumstances of a given case warrant it." ([D.E. 180] at 11). After a careful consideration of all of the testimony and evidence presented, and for the reasons that follow, the undersigned is *not* persuaded that this is a case warranting an equitable tolling of the limitations period.

The undersigned previously set out the framework for equitable tolling and considered the parties' respective positions on the matter in the Summary Judgment Order. That discussion is repeated here for ease of reference.

> "Equitable tolling is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998) (internal quotation marks and citation omitted). Federal

---

[11] Under Section 2401(b), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency . . . ."

9

courts have permitted "equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96. Equitable tolling, however, "does not require any misconduct on the part of the defendant." *Browning v. AT&T Paradyne*, 120 F.3d 222, 226 (11th Cir. 1997) (citation omitted). The Supreme Court has also recently "acknowledged . . . that tolling might be appropriate in other cases [as well.]" *Young*, 535 U.S. at 50 (citation omitted).

The plaintiff bears the burden of showing circumstances exist that warrant equitable tolling. *See Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) (citing *Justice*, 6 F.3d at 1479). A plaintiff seeking equitable tolling must demonstrate due diligence in pursuing her claims since "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96. "[A]bsence of prejudice [to the defendant] is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). However, "it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Id.*

S.R. contends she is entitled to equitable tolling of the two year statutory period in Section 2401(b) because she provided timely, although defective, notice to the BOP of her claims of sexual assault at FDC-Miami on multiple occasions between December 2003 and June 2005. In considering whether equitable tolling of the limitations period in Section 2401(b) is warranted, federal courts have considered the following five factors: "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Glarner* [*v. U.S., Dept. of Veterans Admin.*, 30 F.3d 697, 702 (6th Cir. 1994)]. Applying these criteria, S.R. has at least raised a genuine issue of disputed material fact as to whether she is entitled to equitable tolling.

S.R. submits her own sworn testimony that she believed she had done everything possible to redress the alleged sexual assaults against her, and that no BOP employee or other government official ever advised her of the existence of Form 95, or any other mechanism for filing an administrative claim. The record also provides support for her contention that she was diligent in notifying the BOP and other federal authorities of her allegations and seeking redress. In December 2003, for instance, she provided an affidavit to a BOP employee describing the alleged sexual assaults by Jenkins, Pollock, and Echeverria during her first two stays at FDC-

CASE NO. 07-20648-CIV-ALTONAGA

Miami. She also sent a letter to her sentencing judge on January 21, 2004 which reiterated many of these allegations. This letter was subsequently forwarded to the BOP by a U.S. Marshal.

On March 9, 2004, she provided another affidavit to agents from the Department of Justice's Office of the Inspector General once again detailing her allegations. Finally, on June 14, 2005, S.R was interviewed by the FBI regarding all of the allegations of sexual assault she suffered at the hands of BOP employees, including the alleged assaults by Cole set forth in her Complaint. In addition to these documented complaints, S.R. also testified she reported her general allegations of abuse to an Assistant United States Attorney and an Alcohol, Tobacco, and Firearms agent soliciting her cooperation in another matter.

S.R. further asserts that the BOP's failure to apprise her of the necessary administrative procedures upon receiving notice of her allegations violated its own regulations. Pursuant to BOP regulations, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13. The federal regulation setting forth the BOP's administrative remedy program also provides as follows:

> There are statutorily-mandated procedures in place for tort claims (28 CFR part 543, subpart C), Inmate Accident Compensation claims (28 CFR part 301), and Freedom of Information Act or Privacy Act requests (28 CFR part 513, subpart D). If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.

C.F.R. § 542.10(c).

In the context of other actions against the government, courts have held that a plaintiff was entitled to equitable tolling of the two year statute of limitations in Section 2401(b) where he or she timely notified an agency of a grievance and where the agency violated its own regulations requiring that it explain the statutorily mandated FTCA procedures for pursuing that grievance. *See Glarner,* 30 F.3d at 702 (court held that claimant was entitled to equitable tolling of Section 2401(b) where he was unaware of Form 95 and regulation required Veteran's Administration to inform him regarding the proper filing requirements); *Casey v. U.S.*, 161 F. Supp. 2d 86, 96 (D. Conn. 2001) (same).

Although the record does not support S.R.'s contention that she was

11

CASE NO. 07-20648-CIV-ALTONAGA

>intentionally misled by the BOP or other government agencies regarding the pursuit of her claims, it nevertheless provides support for her contention that equitable tolling may be warranted. S.R. has provided evidence that she was unaware of the administrative filing requirement until after she was released from federal custody, and that while in custody she diligently pursued her claims to the full extent she believed was possible. Additionally, the current record does not indicate that the United States has been prejudiced by S.R.'s delay in filing. As discussed, S.R. provided timely but defective notice of her claims to government officials. Moreover, although the government was on notice of S.R.'s allegations and initiated an investigation, it never suggested that S.R. contact a lawyer, nor did it advise her of the existence of the statutorily mandated FTCA procedures.
>
>In view of these circumstances, the undersigned is persuaded that this is not "a garden variety claim of excusable neglect," *Irwin*, 498 U.S. at 96, and therefore may be one of those "other cases" in which equitable tolling is appropriate, *see Young*, 535 U.S. at 50. The factual record regarding S.R.'s entitlement to equitable tolling, however, is not complete. The Court, as fact finder with respect to the FTCA claims, requires additional inquiry into the nature and substance of S.R.'s interactions with government employees regarding her claims in order to determine whether equitable tolling is warranted. Nevertheless, drawing all reasonable inferences from the facts in favor of S.R. as the non-movant, the undersigned concludes that S.R. has demonstrated the existence of genuine issues of material fact regarding whether her claims are subject to equitable tolling. *See Stewart*, 117 F.3d at 1285. The United States' Motion for Summary Judgment is therefore denied.

(*Id.* at 12-16) (internal footnotes and citations to the record omitted).

In addition to the case law reviewed in the Summary Judgment Order, it is prudent to address additional guidance from the Eleventh Circuit on the doctrine of equitable tolling. In *Sandvik v. United States*, the court concluded the facts presented did not warrant equitable tolling where Sandvik's motion to vacate his sentence "was late because his lawyer sent it by ordinary mail from Atlanta less than a week before it was due in Miami." 177 F.3d 1269, 1272 (11th Cir. 1999). The court stated "[e]quitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Id.* at 1271 (citations omitted). *See also Wainwright v. Secretary, Dep't of Corr.*, 537 F.3d 1282, 1286 (11th

Cir. 2007) (citations omitted) ("It is well established that attorney error is not an extraordinary circumstance warranting equitable tolling.").

In *Jackson v. Astrue*, the court affirmed the dismissal of an action challenging the denial of Supplemental Social Security benefits on the ground that equitable tolling did not apply. 506 F.3d 1349 (11th Cir. 2007). The court explained that equitable tolling principles require a claimant to show extraordinary circumstances prevented her from timely filing. *Id.* at 1353. This standard of "extraordinary circumstances" may be met "'where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her.'" *Id.* at 1354 (quoting *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005)). Extraordinary circumstances were not found where the claimant relied on the excuse that limited linguistic and legal experience preventing her from understanding the law required her to file her claim in the federal district court, as opposed to state court, where the Appeals Council's instructions on the matter were clear. *Id.* at 1356-57. "[I]gnorance of the law does not, on its own, satisfy the constricted 'extraordinary circumstances' test." *Id.* at 1356 (citation omitted). And the court clerk's action in processing her case without objection did not serve to deliberately mislead Jackson or conceal material information from her. *Id.*

In *Jackson*, the court reviewed other cases where the question of extraordinary circumstances was examined in this Circuit. For example, in *Cabello*, 402 F.3d at 1155, a claim under the Alien Tort Claims Act, 28 U.S.C. § 1350, extraordinary circumstances existed where the murder of Cabello, a Chilean official, was covered up, making it nearly impossible for Cabello's survivors to discover the wrongs perpetrated against him. *Jackson*, 506 F.3d at 1354. In *In re Int'l Admin. Servs.*

CASE NO. 07-20648-CIV-ALTONAGA

*Inc.*, 408 F.3d 689, 700-01 (11th Cir. 2005), extraordinary circumstances justifying equitable tolling were shown where the debtor "went 'to extreme lengths to conceal' evidence of the fraud [it] had committed, making it nearly impossible for the bankruptcy trustee to obtain sufficient information to file a complaint within the statutory period." *Jackson*, 506 F.3d at 1354. In *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993), "plaintiffs failed to show that 'they had no reason to believe they were victims of unlawful discrimination,'" *Jackson*, 506 F.3d at 1354-55, and thus did not present extraordinary circumstances.

As stated in the Summary Judgment Order, the Court was persuaded that this is not "a garden variety claim of excusable neglect," *Irwin*, 498 U.S. at 96, and therefore *may be* one of those "other cases" in which equitable tolling is appropriate, *see Young*, 535 U.S. at 50. ([D.E. 108] at 16) (emphasis added). The undersigned is no longer of that view, having had the opportunity to consider the complete record.

The foregoing factual summary reveals that S.R. had numerous opportunities to convey she desired to file a civil lawsuit seeking money damages from the Government, yet she did not do so. There are numerous instances of S.R. having the ability and opportunity to disclose what was occurring to her each time she was housed at FDC-Miami – intake forms on her return to FCI-Danbury, meetings with psychiatrists, letters to a federal prosecutor and her sentencing judge – but not doing so. Indeed, S.R. even appeared before the undersigned judge, and another federal judge, all the while enduring intolerable sexual assaults at FDC-Miami, but she did not seek to speak privately to either judge about the matter and request protection and instruction. And while on multiple occasions she did communicate the sexual assaults to BOP staff, her psychiatrist, a federal

14

CASE NO. 07-20648-CIV-ALTONAGA

prosecutor, federal agents, her sentencing judge, and even a private attorney, at all times the information was conveyed in the context of either seeking to have criminal charges brought against the individual Defendants or seeking some protection from the continued sexual abuse, rather than in the context of putting the Government on notice that she wanted to pursue remedies under the FTCA.

No extraordinary circumstances prevented S.R. from timely filing her administrative complaint (Standard Form 95) and then a civil action against the Government. S.R.'s status as an inmate, shuttled back and forth between FDC-Miami (the site of the sexual assaults) and the much safer environment of FCI-Danbury, cannot, by itself, serve to fulfill the requirement of extraordinary circumstances. To so find would be tantamount to a rule waiving the pre-suit requirement for incarcerated claimants. S.R. could have refused to return to FDC-Miami after her first stay, but did not. S.R. knew how to, and did, fill out cop-outs, send correspondence, and speak to BOP staff and other federal agents about the sexual acts. S.R. knew how to consult with an attorney (Ms. Anderson) while in custody (even if she did not know the name of her criminal defense attorney) and could have seen one as early as December 2005 upon her release to a half-way house, at the very latest.

That S.R. viewed the situation from the lens of the criminal process, i.e., seeking to have criminal charges brought against the individual Defendants rather than a complaint against the Government for money damages, does not excuse her untimely filing. Again, ignorance of the law, or in this case, of legal remedies, does not create an extraordinary circumstance warranting equitable tolling. Furthermore, at no time did any Government official mislead S.R. into believing her only

remedy lay with the criminal process, or otherwise mislead her by not affirmatively advising her of the Standard Form 95 requirement. This is not a case of the Plaintiff not knowing the wrongs perpetrated against her, or of an incapacitated or otherwise restrained plaintiff lacking the means to communicate and seek legal advice.

Even when considering the question of equitable tolling under the criteria used in the Sixth Circuit, and evaluated by the Court in the Summary Judgment Order, that is, the "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement," *Glarner*, 30 F.3d at 702, the Court now remains unpersuaded. While S.R. did not have knowledge of the filing requirements, she did not diligently pursue her right to seek money damages or even indicate to anyone that she wanted to pursue money damages against the Government. In contrast to S.R., although Glarner did not complete the Form 95, he did go to the Office of Disabled American Veterans and state he wanted to file a negligence claim against the Government, and that agency then had the obligation to provide him with the Form 95. *Id.* at 700-701. And when he filed an incorrect form, that form stated he wanted compensation as a result of negligence. *Id.*

S.R. was haphazard and inconsistent in communicating her intolerable circumstances at the hands of BOP guards each time she voluntarily returned to FDC-Miami to testify as a cooperating witness for the Government. Regarding any prejudice to the Government, had the Government been

apprised of S.R.'s intentions to seek monetary damages, and in the sum indicated in her Complaint,[12] it could have taken action to prevent further acts of abuse at the hands of the individual Defendants, action not taken by the BOP over the course of the years and notwithstanding that agency's notice regarding the abuse. And as to the reasonableness of S.R. remaining ignorant of the notice requirement, it was not reasonable for her to so remain. She in fact did consult an attorney while housed at FDC-Miami; that attorney's failure to properly advise S.R. is not a basis for equitable tolling. S.R. is a competent, knowledgeable woman, able to communicate effectively in writing and orally, and capable of either directly or indirectly[13] seeking legal advice.

## III.    Conclusion

The undersigned finds S.R. was sexually abused on numerous occasions by the individual Defendants. The BOP and FDC-Miami did have notice of the illegal conduct taking place, and were woefully deficient in addressing it and giving S.R. protection. However, and regrettably, S.R. has not shown that extraordinary circumstances both beyond her control and unavoidable even with diligence existed, entitling her to an equitable tolling of the jurisdictional requirements of the FTCA. Equitable tolling is reserved for situations where the claimant has actively pursued her judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by her adversary's misconduct into allowing the filing deadline to pass.

---

[12] "The sum certain requirement of [28 U.S.C.] § 2675(a) serves a valuable purpose; it informs the government of the maximum amount of a claim, enabling the government to evaluate whether to settle a claim or proceed to trial." *Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008).

[13] Even if S.R. may claim she was prevented from speaking to an attorney, which the facts demonstrate otherwise, she did communicate with family and others and could have at a minimum asked for instruction on how to file a claim for money damages against the Government.

CASE NO. 07-20648-CIV-ALTONAGA

*Irwin*, 498 U.S. at 96. Neither circumstance has been shown here, and the egregiousness of the complained-of conduct is not a factor in the equitable tolling analysis.

Accordingly, and for the reasons stated, it is **ORDERED AND ADJUDGED** that the Government is entitled to a judgment on partial findings pursuant to Rule 52(c), Federal Rules of Civil Procedure. Judgment will be entered separately against the Plaintiff and in favor of the Government.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of November, 2008.

*[signature]*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record